UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carolyn K.,[1]

          Plaintiff,                  Case No.  20-cv-1394 (NEB) (LIB)

     v.                      **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

          Defendant.

Plaintiff, Carolyn K., (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying her application for disability benefits.  The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1).  This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions.  [Docket Nos. 19, 21].  For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 19], **BE DENIED** and Defendant's Motion for Summary Judgment, [Docket No. 21], **BE GRANTED.**

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. Procedural History

On September 12, 2016, Plaintiff filed a Title II application for a period of disability and disability benefits, and an application for supplemental security income.  (Tr. 237-240, 241-244).[2] Plaintiff alleged that her disability began on August 3, 2016, and that her disability was caused by impairments of a "right arm fracture 12/06/12 with continued pain and weakness," "diabetes," "high cholesterol," and "HBP."  (Tr. 87).  The Commissioner initially denied Plaintiff's present claims on July 6, 2017, and again, upon reconsideration, on October 18, 2017.  (Tr. 86-157, 162-177).   On November 20, 2017, Plaintiff filed a written request for a hearing before an Administrative Law Judge.  (Tr. 178-180).

Administrative Law Judge Nicholas Grey (hereinafter "ALJ") conducted a hearing on April 4, 2019.  (Tr. 10).  Plaintiff testified at the hearing, along with an independent vocational expert, Steven Bosch, M.S. ("IVE Bosch").  (Tr. 13).  On May 22, 2019, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits, as well as her request for supplemental security income.  (Tr. 10-29).  The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 24).

Thereafter, Plaintiff sought review of the decision by the Appeals Council.  (Tr. 1-6). Subsequently, on April 20, 2020, the Appeals Council denied Plaintiff's request for review.  (Id.). Accordingly, the ALJ's decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 18], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 64 exhibits. (See Administrative Record [Docket No. 18). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On June 17, 2020, Plaintiff filed the present action. (Compl. [Docket No. 1]).  Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions.  [Docket Nos. 19, 21].

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision.  20 C.F.R. §§ 404.907–404.909.  A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ").  42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis.  This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).  The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20

C.F.R. §§ 404.967–404.982.  The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.  In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled.  (Tr. 1-6).

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps.  However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole.  42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole.").  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ.  Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the

Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

Before beginning the five-step disability evaluation process, the ALJ first determined that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2021. (Tr. 18). This finding is not in dispute.

5

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 3, 2016.  (Id.).  This finding is not in dispute.  The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: a history of a right humerus fracture with osteoarthritis and capsulitis.  (Id.).  These findings are not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 19).  Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.02A, 1.02B, 1.03.  (Id.).  Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with lifting 20 pounds occasionally and 10 pounds frequently; the claimant can stand or walk about 6 hours out of 8 and sit about 6 hours out of eight; with frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; with unlimited balancing; frequent stooping, kneeling, and crouching; occasional crawling; and with no overhead work with the dominant right upper extremity.

(Tr. 19).  Plaintiff does not challenge this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also found that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 20).  Plaintiff does <u>not</u> specifically challenge this credibility finding by the ALJ.

Based on his RFC determination and relying on the testimony of the independent vocational expert, IVE Bosch, the ALJ found that Plaintiff was able to perform her past relevant work as a "housekeeping cleaner."  (Tr. 23).  The ALJ's finding that Plaintiff could perform her past relevant work as a "housekeeping cleaner" is a sufficient, independent basis upon which the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.  <u>See, e.g.</u>, <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 500 (8th Cir. 2004).  Plaintiff does not directly challenge the ALJ's findings at step four.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period.  (Tr. 24).

## IV. Analysis

Plaintiff raises one overarching issue on her appeal of the ALJ's decision: whether Plaintiff was denied a full and fair hearing.  (<u>See</u> Plf.'s Mem., [Docket No. 20], at p. 12).  In support of this argument, Plaintiff appears to assert that her right to procedural due process was violated when "the application of a predetermined time limit denied [her] an adequate opportunity to develop a 'full and fair' record" because her direct examination was limited, and because she was precluded from "performing any meaningful cross-examination" of the vocational expert.  (<u>Id.</u> at p. 14). Plaintiff also appears to argue that the ALJ wrongfully denied her request for a supplemental hearing.  (<u>Id.</u> at p. 18-20).

The Acting Commissioner contends that she is entitled to summary judgment, arguing that each of Plaintiff's arguments are unavailing, and that the ALJ's opinion is supported by substantial evidence in the record. (See Def.'s Mem. [Docket No. 22]).

## A.  Length of the Hearing and Development of the Record

Plaintiff appears to intertwine her argument that her procedural due process rights were violated with her argument that she was denied a "full and fair" hearing and was unable to develop the record because of the time limit imposed by the ALJ.  (See Plf.'s Mem., [Docket No. 20], at p. 14).  In support, Plaintiff argues that the time limit "prior to any substantive issues being addressed tarnished the entire proceeding"; "forced the [Plaintiff and her representative] to truncate" arguments and testimony; and "caused the ALJ to truncate his inquiry of both [Plaintiff] and [the] VE."  (Id.).

Because procedural due process under the Fifth Amendment requires full and fair hearings for disability benefits, see Passmore v. Astrue, 533 F.3d 658, 663 (8th Cir. 2008), it follows then that, to the extent Plaintiff received a full and fair hearing and adequately developed the record within the hearing time, Plaintiff's procedural due process argument necessarily fails. Accordingly, the Court will analyze whether Plaintiff received a full and fair hearing and had the opportunity to develop the record under the time limit imposed by the ALJ.

It is well-settled "that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."  Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citing cases); Cox v. Astrue, 495 F.3d 614, 618 (8th Cir. 2007).  Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly so that "'deserving claimants who apply for benefits receive justice.'"  Wilcutts v. Apfel, 143 F.3d 1134, 1138 (8th Cir. 1998).  Moreover, because "[t]he ALJ possesses no interest in

denying benefits and must act neutrally in developing the record," this duty extends even to those cases where the claimant is represented by counsel at the administrative hearing.  Snead, 360 F.3d at 838. "Where the ALJ fails to fully develop the record, this court may remand for the taking of further evidence." Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002) (citing Payton v. Shalala, 25 F.3d 684, 686 (8th Cir. 1994)).

"There is no bright line test for determining when the Secretary has failed to develop the record," but "the determination in each case must be made on a case by case basis." Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (quoting Lashley v. Secretary of Health & Human Services, 708 F.2d 1048, 1052 (6th Cir. 1983)).  However, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."  Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (citing Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993)).  "Where 'the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations,' the claimant has received a 'full and fair hearing.'"  Jones v. Astrue, 619 F.3d 963, 696 (8th Cir. 2010) (quoting Halverson v. Astrue, 600 F.3d 922, 933 (8th Cir. 2010)).

Citing HALLEX I-2-6-1,[3] Plaintiff first appears to argue that she was denied a fair and impartial hearing because, at the "outset of [Plaintiff's] hearing," the ALJ set a pre-determined time limit in order to accommodate a subsequent hearing.  (See Plf.'s Mem., [Docket No. 20], at p. 13).  In other words, it appears that Plaintiff argues that the ALJ's decision to set a pre-

---

[3] The Court notes that, to the extent Plaintiff cites to the Commissioner's Hearings, Appeals, and Litigation Law Manual (the "HALLEX"), the Eighth Circuit Court of Appeals has not explicitly ruled on the legal effect of the HALLEX.  See Ellis v. Astrue, No. 4:07cv1031 AGF, 2008 WL 4449452, at *15-16 (E.D. Mo. Sept. 25, 2008) (recognizing that "[w]hile the Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX, other Circuits have," and concluding that "[t]his Court believes the Eighth Circuit would hold that HALLEX does not have the force of law").  Accordingly, while the Court refers to the HALLEX, it does so only to address Plaintiff's arguments.

determined time limit on Plaintiff's hearing in and of itself was improper. However, the Court find this argument unpersuasive.

HALLEX I-2-6-1 provides that the ALJ must "provide the claimant with reasonable notice of a hearing"; "conduct administrative hearings in a fair and impartial manner . . . look[ing] fully into the issues, question the claimant and any witnesses, and accept as evidence any documents . . . material to the issues"; and "ensure that the claimant understands how the ALJ will conduct the hearing." HALLEX I-2-6-1, 1993 WL 643020 (S.S.A.). This section also provides that ALJ hearings generally follow the same format: an introduction; an opening statement; an oath or affirmation; adducing evidence; receipt of oral testimony; presentation of written or oral argument; and a closing statement. (Id.)

However, Plaintiff's reliance on HALLEX I-2-6-1 is misguided. HALLEX I-2-6-1 is silent as to the required length of time for ALJ hearings. Further, Plaintiff fails to articulate, and this Court does not find, any legal authority to support her contention that social security disability hearings require a specific length of time in order to develop a full and fair record. See Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (finding substantial evidence supported the ALJ's determination where the administrative hearing was thirteen minutes long); Welch v. Astrue, No. 2:10CV021 JCH TIA, 2011 WL 1045563, at *16 (E.D. Mo. Mar. 3, 2011), report and recommendation adopted, No. 2:10CV0021 JCH, 2011 WL 971902 (E.D. Mo. Mar. 17, 2011) (holding that the ALJ fully and fairly developed the record where an administrative hearing lasted forty-seven minutes). But see Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (holding that where, among other things, "the hearing 'lasted a mere [ten] minutes, and was fully transcribed in approximately eleven pages'" and the ALJ asked no questions, the record was not fully and fairly developed); Wilson v. Astrue, No. 4:09-CV-1714 (DDN), 2010 WL 4272708, at *6 (E.D. Mo.

Oct. 25, 2010) (holding that the ALJ failed to properly develop the record to determine the extent of plaintiff's physical limitations, as required for a proper RFC determination, where the administrative hearing lasted seven minutes). Therefore, the Court finds that the ALJ did not err in the mere act of setting a time limit at the commencement of Plaintiff's hearing.

Furthermore, the record now before the Court demonstrates that Plaintiff had an adequate opportunity to develop a full and fair record within the hearing time.

Here, in accordance with HALLEX I-2-6-1, Plaintiff's counsel was notified that Plaintiff's hearing would be no longer than 45 minutes. (Tr. 14); see HALLEX I-2-6-1, 1993 WL 643020 (S.S.A.) (providing that the ALJ must "provide the claimant with reasonable notice of a hearing"). The ALJ commenced the hearing by providing that it would "typically take about 30 to 40 minutes," and the hearing would "need to end prior to . . . 2:15 [p.m.]" to accommodate "a subsequent hearing with [Plaintiff's counsel's] office." (Tr. 34-35); see HALLEX I-2-6-1, 1993 WL 643020 (S.S.A.) (providing that the ALJ must "ensure that the claimant understands how the ALJ will conduct the hearing."). The ALJ also informed Plaintiff that he would take her testimony and the testimony of IVE Bosch. (Tr. 34). Plaintiff's counsel then made an opening statement describing Plaintiff's physical ailments and providing that her ailments met listings 1.02A, 1.02B, and 1.03. See HALLEX I-2-6-1, 1993 WL 643020 (S.S.A.) (providing that ALJ hearings may generally proceed with, among other things, an opening statement); (Tr. 35-36). Plaintiff's counsel then went on to describe Plaintiff's other impairments to ultimately conclude that "the work . . . [Plaintiff] did as a housekeeper would exceed the limitations that are cited . . . at Exhibit 7A." (Tr. 36).

The ALJ then went on to question Plaintiff about collecting unemployment in 2017, why she left her prior employers, and whether she could perform housekeeping work. (Tr. 37-40); see

HALLEX I-2-6-1, 1993 WL 643020 (S.S.A.) (providing that the ALJ must "conduct administrative hearings in a fair and impartial manner . . . look[ing] fully into the issues, question the claimant and any witnesses, and accept as evidence any documents . . . material to the issues"). Plaintiff responded, among other things, that she tried to look for other work while on unemployment; that she stopped working in the lunchroom for the school district because she "couldn't take the pain anymore"; and that she would be unable to work as a housekeeper because "everything has to come from [her left] arm." (Tr. 38-39).

Plaintiff's counsel then questioned Plaintiff eliciting testimony that she continued looking for part-time work while on unemployment; that her last full-time employment was twenty years ago; that she is not working now because she was "in a lot of pain"; and that she mistakenly failed to provide medical records from two medical providers. (Tr. 39-50). Plaintiff's counsel then stated, "I don't have anything further, Judge." (Tr. 50).

The ALJ then went on to examine IVE Bosch. (Tr. 50); see HALLEX I-2-6-1, 1993 WL 643020 (S.S.A.) (providing that the ALJ must "conduct administrative hearings in a fair and impartial manner . . . look[ing] fully into the issues, question the claimant and any witnesses, and accept as evidence any documents . . . material to the issues"). The ALJ confirmed with the IVE Bosch that he identified in his vocational assessment past work as housekeeping and deli worker from Plaintiff's work history at Exhibit 5E. (Tr. 51). The ALJ then posed IVE Bosch a hypothetical:

> I'd like you to assume an individual the claimant's age, education, and past work. For now[,] assume, the deli worker and housekeeping. And assume that this individual may exert 20 pounds occasionally and 10 pounds frequently, she can stand or walk about 6 hours out of eight and sit about six hours out of eight. She may frequently climb ramps and stairs but never ladders, ropes, or scaffolds, she's unlimited for balancing, limited to frequent stooping, kneeling, crouching, only occasional crawling, and she may perform no overhead work with a dominant right

12

> upper extremity. Would an individual with those limitations be able to perform
> either of the jobs that you performed—either of the jobs that you identified?

(Tr. 51-52). To which IVE Bosch opined, "A hypothetical person with those limits, yes, could

perform both jobs, the housekeeping position and the work in the deli." (Tr. 52). IVE Bosch then

went on to confirm that his testimony was consistent with the Dictionary of Occupation Titles and

with his experience. (Tr. 52). The ALJ confirmed with IVE Bosch that "overhead work" in a

housekeeping position could be done with the non-dominant arm if an individual had one arm they

could not raise. (Tr. 53).

Plaintiff's counsel then questioned IVE Bosch as to whether he had Exhibit 5E and whether

he had reviewed Plaintiff's "detailed earnings query." (Tr. 56). The ALJ then questioned Plaintiff

on her past work activities for Allina. (Tr. 56-59). IVE Bosch opined that her prior work at Allina

would be classified as a dietary aide, and that the prior hypothetical would preclude that kind of

work. (Tr. 56-60). Plaintiff's counsel then went on to question IVE Bosch as to whether he knew

the standard for "past relevant work" and how he decided Plaintiff's "past relevant work." (Tr.

60-62). The ALJ interrupted Plaintiff's counsel stating, "what [IVE Bosch] believe[s] [is] past

relevant work is . . . [of] no relevance to me." (Tr. 62).

Plaintiff's counsel then went on to ask IVE Bosch what he understood about Plaintiff's

ability to lift based on the ALJ's first hypothetical to which IVE Bosch responded that it would be

her ability to "exert 20 to 10 pounds of force." (Tr. 63). Plaintiff then testified that she did

housekeeping work within the last 15 years. (Tr. 65). The ALJ concluded the hearing and

informed Plaintiff's counsel that he could submit a request for a supplemental hearing with an

explanation of "what we're going to get into and why we need to get into it for disposition of the

case." (Tr. 67).

The Court finds that Plaintiff had an adequate opportunity to develop a fair and full record at the hearing. While the record indicates that Plaintiff's administrative hearing lasted 41 minutes, the length of the hearing is not dispositive.[4] <u>Battles v. Shalala</u>, 36 F.3d 43, 45 (8th Cir. 1994). Plaintiff's counsel began the hearing with an opening statement detailing Plaintiff's argument that "the work . . . [Plaintiff] did as a housekeeper would exceed the limitations that are cited . . . at Exhibit 7A." Plaintiff was also questioned by the ALJ and her counsel testifying about her subjective complaints, how her symptoms prevented her from working, her past employment and the activities she performed therein. Plaintiff's testimony was sufficient to determine the extent of Plaintiff's physical limitations, as required, for a proper RFC determination. <u>See</u> <u>e.g.</u>, <u>Jennifer A. v. Berryhill</u>, No. CV 18-459 (BRT), 2019 WL 569830, at *12 (D. Minn. Feb. 12, 2019), aff'd sub nom. <u>Adamczyk v. Saul</u>, 817 F. App'x 287 (8th Cir. 2020) (holding that the ALJ properly considered Plaintiff's testimony of subjective complaints of pain and limitations, which were reflected in her RFC).

As noted above, Plaintiff argues that the time limit imposed denied her a full and fair hearing because she was forced to shorten her own testimony. However, this is belied by the record. Indeed, Plaintiff's counsel was aware beforehand that her hearing would be, at most, 45 minutes long—a set time that was put in place in order to accommodate Plaintiff's counsel's subsequent hearing with another client. While Plaintiff's shortened testimony may have been in due, in part, to the allotted time set by the ALJ, the Court finds that Plaintiff provided substantial testimony to develop a full and fair record within the 41-minute hearing.

Plaintiff further argues that the time limit imposed denied her a full and fair hearing because she did not have an opportunity to meaningfully cross-examine IVE Bosch. However, the record

---

[4] Plaintiff maintains that her hearing lasted 38 minutes. However, the hearing transcript provides that the hearing lasted 41 minutes because it commenced at 1:33 p.m. and closed at 2:14 p.m. (Tr. 31-67)

before the Court provides otherwise.  While "[d]ue process requires that a claimant [for social security disability benefits] be given the opportunity to cross-examine and subpoena the individuals who submit reports," Plaintiff was in fact allowed the opportunity to cross-examine IVE Bosch and took the opportunity to do so.  Coffin v. Sullivan, 895 F.2d 1206, 1212 (8th Cir. 1990).  Specifically, IVE Bosch was questioned by both the ALJ and Plaintiff's counsel regarding whether Plaintiff could perform her past relevant work as a housekeeper given her RFC.  The ALJ then posed IVE Bosch a hypothetical reflecting impairments and limitations that matched the RFC—i.e., whether an individual who was limited to no overheard work with a dominant right upper extremity be able to perform either of the past relevant work IVE Bosch identified; to which IVE Bosch confirmed that an individual with said limitations could do so.  (Tr. 51-52).   At this point, the record was sufficiently developed to rely on IVE Bosch's testimony.  See Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006) (ALJ's hypothetical question to the vocational expert need only include those impairments that the ALJ finds are substantially supported by the record as a whole).

Plaintiff appears to take issue with the ALJ terminating cross-examination into IVE Bosch's understanding of "relevant past work," "overhead work," or whether he reviewed Exhibit 7D.  In support, Plaintiff cites to HALLEX I-2-6-76, which provides that "an ALJ will provide . . . reasonable time to present oral argument[, and] absent special circumstances, the ALJ will not fix a time limit on oral argument prior to the presentation of arguments.  HALLEX I-2-6-76, 1993 WL 643020 (S.S.A.).  However, here too, Plaintiff's reliance on HALLEX I-2-6-76 is misguided.  Plaintiff fails to argue that she was altogether denied oral argument as it is specifically referred to in HALLEX I-2-6-76 and fails to cite to any case law defining oral argument in this context to include cross-examination.

Moreover, "the right of cross-examination. . . is not absolute, and reasonable limits may be placed on cross-examination based on factors such as relevance." <u>See, e.g.</u>, <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986)). In the present case, the ALJ was not required to permit IVE Bosch to draw conclusions not within his area of expertise or for IVE Bosch to provide testimony pertaining to Plaintiff's RFC or the resolution of ultimate issues of fact or law. HALLEX I-2-6-74, 1993 WL 643020 (S.S.A.). Lastly, Plaintiff fails to provide, and the Court does not find, any case in which a court has determined that the ALJ was required to allow Plaintiff's counsel to continue cross-examination of a witness in an administrative hearing.

Accordingly, in this non-adversarial process, because Plaintiff was provided with a full and fair hearing and was allowed to fully and fairly develop the record, Plaintiff's due process rights were satisfied.

## B. Denial of Supplemental Hearing

Plaintiff next contends that the ALJ improperly denied her a supplemental hearing in order to continue questioning Plaintiff and IVE Bosch. However, because this is simply an extension of Plaintiff's above argument, it fails for the same reasons.

Plaintiff maintains that, following the April 4, 2019, Hearing, she sent a letter requesting a supplemental hearing, or in the alternative, additional time to request a supplemental hearing in order review the audio recording. (Tr. 227). On April 9, 2019, the ALJ denied Plaintiff's request for a supplemental hearing because "it did not address specific grounds." (Tr. 228). But Plaintiff was granted until April 12, 2019, to submit a renewed request and was directed to provide, among other things, the identities of the witnesses sought; a proffer of the expected testimony; and how the new testimony would be germane to the disposition. (<u>Id.</u>).

Thereafter, on April 12, 2019, Plaintiff renewed her request for a supplemental hearing. (Tr. 231). The April 12, 2019, letter provided that Plaintiff's testimony would be sought in relation to her ability to maintain pace, persistence, and concentration. (Id.). The letter further provided that IVE Bosch's testimony would be sought in relation to Plaintiff's testimony regarding her vocational limitations, and to gain further insight "into the extent which [Plaintiff's] occupation base may be eroded due to the limitations testified to by him." (Id.). In support, Plaintiff cited to HALLEX I-2-6-80, which provides that "[a] continuance or supplemental hearing is appropriate when the claimant wishes to present evidence, but cannot present it by document, affidavit, or deposition without diminishing its probative value because of the absence of opportunity for detailed examination or cross-examination of the witness."

The ALJ's May 22, 2019, decision denied Plaintiff's second request for a supplemental hearing. Citing to HALLEX I-2-6-60, the ALJ provided that the subject and scope of testimony was determined by the ALJ and that he was not required to permit repetitive or cumulative testimony. (Tr. 14); see HALLEX I-2-6-60, 1993 WL 643020 (S.S.A.). The ALJ's decision provided that Plaintiff's April 12, 2019, letter did not state how testimony on the topic of concentration, persistence, and pace from Plaintiff and IVE Bosch was relevant to a determination because, in part, Plaintiff did not have a medically determinable impairment requiring such testimony, and in part, because testimony regarding Plaintiff's symptoms would be repetitive and cumulative. (Tr. 14-15). The ALJ further provided that continued cross-examination of IVE Bosch on his understanding of Plaintiff's earnings was not necessary since this entailed legal determinations reserved to the ALJ. See SSR 00-4P, 2000 WL 1898704, *2 (S.S.A. Dec. 4, 2000) (providing

Based on the record now before the Court, substantial evidence supports the ALJ's denial of a supplemental hearing. As noted above, Plaintiff was questioned at the hearing with no showing for more necessary questions—she testified to her impairments, her symptoms, her past work, and what prevented her from working. The ALJ provided in the May 22, 2019, decision, and the Court agrees that any testimony sought from Plaintiff regarding her ability to maintain pace, persistence, and concentration is irrelevant, and to the extent Plaintiff seeks testimony regarding her limitations, this testimony is cumulative.

Re-cross examining IVE Bosch's is also not necessary. IVE Bosch testified as to whether Plaintiff could perform her past relevant work as a housekeeper given her RFC. See Lacroix, 465 F.3d at 889. Beyond this, any questioning as to his understanding of "past relevant work" or "overhead work" is not relevant and questioning regarding Plaintiff's past earnings involves findings of law reserved for the ALJ. Furthermore, seeking a supplemental hearing to present IVE Bosch with additional hypotheticals is irrelevant. The only hypothetical necessary is the hypothetical that includes impairments similar to Plaintiff's, as provided in the RFC. See Scott v. Berryhill, 855 F.3d 853, 857 (8th Cir. 2017) (a properly phrased hypothetical includes limitations mirroring those of claimant); see also Lacroix, 465 F.3d at 889 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

Accordingly, the Court finds that substantial evidence supports the ALJ's denial of a supplemental hearing.

## C.  Substantial Evidence

Lastly, the Court notes that Plaintiff fails to argue that there is a lack of substantial evidence in the whole of the record to support the ALJ's determination overall the Plaintiff is not disabled. However, the Court's review of the record, as a whole, indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.  Specifically, on the Court's review of the record, as a whole, the ALJ's decision, including to discount Plaintiff's subjective complaints, his RFC determination, and his decision that Plaintiff could perform her past work within the RFC determination, were each supported by substantial evidence in the record.

Therefore, because the ALJ's decision is supported by substantial evidence, the record is fully and fairly developed as a matter of law.  Plaintiff's attempt to alter the substantial evidence finding by arguing that she was denied a full and fair hearing is insufficient.

## V.  Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, the Court **HEREBY RECOMMENDS THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 19], be **DENIED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 21], be **GRANTED**; and

3. This present case be **DISMISSED with prejudice**.


Dated:  January 30, 2022                                  s/Leo I. Brisbois
                                                          Hon. Leo I. Brisbois
                                                          United States Magistrate Judge